**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALFRED ALONZO MAYO,** | : | |
| | : | |
| **Petitioner** | : | **CIVIL ACTION NO. 3:13-CV-01453** |
| | : | |
| **vs.** | : | **(Petition Filed 11/13/2012)** |
| | : | |
| **PENNSYLVANIA BOARD OF** | : | **(Judge Caputo)** |
| **PROBATION & PAROLE,** | : | |
| | : | |
| **Respondent** | : | |

**MEMORANDUM**

On May 30, 2013, Petitioner, Alfred Alonzo Mayo, an inmate confined at the

State Correctional Institution, Dallas, Pennsylvania, filed a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254.   On August 11, 1993, Mayo received an aggregate state

court sentence of 6 to 20 years for various offenses, including Robbery, with a maximum

sentence date of February 15, 2013.   He was paroled initially on April 26, 1999. He

subsequently committed technical parole violations as well as new offenses and was

recommitted by the Pennsylvania Board of Probation and Parole ("the Board") and his

maximum sentence date recalculated.  His present maximum sentence date is March 14,

2016.   Mayo challenges the Board's recalculation of his maximum sentence date.   The

petition is ripe for disposition. For the reasons that follow, the petition will be denied.

**Background**

On August 11, 1993, Mayo was convicted in the Berks County Court of

Common Pleas of robbery involving a threat of serious bodily injury, simple assault, and

possession of an instrument of a crime and received a sentence of imprisonment of 6 to 20

years.  Doc. 9-1, Exhibits attached to Answer, Exhibit 1 at 2.  Also, on August 11, 1993,

Mayo was convicted of an additional simple assault charge and sentenced by the Berks

County Court of Common Pleas to a concurrent term of imprisonment of 4 months to 2

years. Id.  Thereafter, on October 4, 1993, Mayo was convicted of a charge of aggravated

assault involving serious bodily injury by the Berks County Court of Common Pleas and

received a sentence of imprisonment of 5 years, 6 months to 12 years to run concurrently

with the sentences imposed on August 11, 1993. Id.

On February 11, 1999, the Board determined that Mayo should be paroled on

or after April 4, 1999, to a community correction center for a minimum of 4 months and that

he should not be released from the community corrections center until he obtained a job and

place to live. Id., Exhibit 2 at 6.  On April 26, 1999, Mayo was paroled subject to a number

a conditions, including that he spend 4 months at ADAPPT House of Reading ("ADAPPT"),

a community corrections center, and abide by the rules of ADAPPT. Id., Exhibit 3 at 10-13.

On June 17, 1999, Mayo was charged with violating Special Condition No. 7

 of his parole which required, inter alia, that he "abide by all rules, regulations and directives

of the [community corrections center] . Id., at 12-13 & Exhibit 4 at 15.  On June 24, 1999,

a hearing was held on the charge of violating Special Condition No. 7 and Mayo admitted

that he violated that condition. Id., Exhibit 5 at 18.   On August 4, 1999, the Board

recommitted Mayo as a technical parole violator to a state correctional institution to serve

6 months backtime. Id., Exhibit 6 at 22.   Mayo's maximum sentence date remained

February 15, 2013. Id.

On November 13, 2000, the Board reparoled Mayo subject to a number a

conditions, including that he spend 3 months at ADAPPT. Id., Exhibit 10 at 32-35.  Mayo

2

was advised that he had to abide by the conditions of reparole, including complying with the rules and regulations of ADAPPT and all state and federal criminal laws and abstaining from the possession and use of controlled substances,  and he agreed to do so. Id.

On October 17, 2001, Mayo was arrested by the Pottsville Bureau of Police and charged with possession of a controlled substance (37 packets of cocaine) and possession with intent to deliver a controlled substance. Id., Exhibit 11 at 37-39.    On February 28, 2003, Mayo pled guilty in the Court of Common Pleas of Schuylkill County to the charge of possession of a controlled substance with the agreement that the district attorney would nol pros the charge of possession with intent to deliver. Id., Exhibit 14 at 46. Mayo was sentenced to a term of imprisonment of 6  to 12 months in the Schuylkill County Prison. Id.

On August 5, 2003, the Board revoked Mayo's parole and recommitted him for 9 months as a convicted parole violator based on the conviction of possession of a controlled substance and recalculated his maximum sentence date to March 17, 2014. Id., Exhibit 15. Mayo did not contest administratively the revocation of parole in accordance with the Board's regulation at 37 Pa. Code § 73.1.[1]

On October 23, 2003, the Board determined that Mayo should be reparoled subject to a number a conditions. Id., Exhibit 16 at 51-53.  On December 10, 2003, the Board temporarily suspended the reparole because Mayo engaged in misconduct. Id., Exhibit 17 at 55.  On March 11, 2004, the Board rescinded the Board action of October 23, 2003,

---

[1] Section 73.1 permits a parolee to file an administrative appeal within 30 days of the mailing date of the Board's order. It further provides that "[s]econd and subsequent appeals and appeals which are out of time under these rules will not be received."

because Mayo's best interests and the interests of the public did not justify or require reparole. Id., Exhibit 18 at 57.   On November 2, 2004, the Board determined it would be in the best interests of Mayo and the public to grant him reparole. Id., Exhibit 19 at 60.   On January 3, 2005, Mayo was released on reparole subject to a number of conditions, including that he would not engage in any further criminal conduct under state or federal law, including possessing any firearm or other weapon. Id., Exhibit 20 at 64-67.   Mayo's maximum sentence date remained March 17, 2014. Id.

On January 4, 2005, Mayo was arrested by the Reading Police Department and charged with recklessly endangering another person, terroristic threats and harassment. Id., Exhibit 21 at 69.   The charges arose out of an incident where Mayo held a firearm to the head of Yomaira Rios and threatened to kill her. Id.   On February 2, 2005, the Board rescinded Mayo's January 3, 2005, release on reparole because of the pending criminal charges and on February 10, 2005, reinstated the reparole after those pending charges were dismissed. Id., Exhibit 22 at 73 & Exhibit 23 at 75.

On September 22, 2005, Mayo was arrested by the West Pottsgrove Police Department and charged with criminal conspiracy (3 counts); receiving stolen property (3 counts); persons not to possess, use, manufacture, sell or transfer firearms (1 count); firearms not to be carried without a license (3 counts); possession of a firearm with altered manufacturer's serial number (1 count); prohibited offensive weapon (3 counts); and speeding. Doc. 9-2, Exhibits attached to Answer, Exhibit 24 at 2-4.   The charges arose out of a traffic stop where Mayo  in the company of six other individuals was found in possession of the following three handguns: (1) .357 caliber Smith and Wesson,  Model 19; (2) .45 caliber Sig Sauer, Model P220; and (3) .40 caliber Glock, Model 23. Id.   Mayo was driving

the vehicle at a speed of 74.1 miles per hour in a 55 mile per hour speed zone. Id.  The three

firearms were found in plain view in the rear passenger compartment on the floor. Id.   An

investigation revealed that the firearms were stolen. Id.

On December 7, 2005, the Board issued a detainer against Mayo pending the

disposition of the criminal charges and recommitted him to a state correctional institution as

a technical parole violator to serve 12 months backtime when available. Id., Exhibit 25 at 6.

On May 1, 2006, all the charges were nol prossed in the Court of Common

Pleas of Montgomery County; the Information filed by the District Attorney was amended to

1 count of possessing an instrument of a crime (PIC), a misdemeanor of the first degree

under state law with maximum penalty of 5 years;[2] and Mayo pled guilty to that charge and

was sentenced by the Court of Common Pleas to a term of imprisonment of not less than

time served to  23 months at the Montgomery County Correctional Facility. Id., Exhibit 26 at

9-10.

On November 2, 2006, the Board based on Mayo's plea of guilty to the charge

of possessing an instrument of a crime issued a decision which recommitted Mayo to a state

correctional institution as a convicted parole violator to serve 12 months backtime and

recalculated his maximum sentence date to April 19, 2015. Id., Exhibit 27 at 12.  The

decision was mailed to Mayo on December 4, 2006. Id.  On December 20, 2006, Mayo filed

a petition for administrative review with the Board. Id., Exhibit 28 at 14.  On February 5,

2007, the Board rescinded its decision dated November 2, 2006, to the extent that it

recalculated Mayo's maximum sentence date to October 28, 2014. Id., Exhibit 29 at 24.

---

[2] 18 Pa.C.S.A. § 907.

Mayo was advised of his right to seek administrative review of the Board's February 5, 2007, decision. Id.  On February 23, 2007, Mayo filed a petition for administrative review of the Board's February 5, 2007, decision. Id., Exhibit 31 at 28-29.  Mayo's petition was denied by the Board on March 22, 2007. Id., Exhibit 32 at 31.

On March 12, 2008, Mayo was reparoled subject to a number of conditions, including that he would not engage in any further criminal conduct under state or federal law. Id., Exhibit 35 at 40-42.  His maximum sentence date noted on the order of release was October 28, 2014. Id.

On August 22, 2008, Mayo was arrested by the Pottsville Bureau of Police and charged with the following four crimes: (1) delivery of a controlled substance (cocaine); (2) possession with intent to deliver a controlled substance (cocaine); (3) possession of a controlled substance (cocaine); and (4) criminal use of communication facility. Id., Exhibit 36 at 44-48.  The charges arose out of a controlled purchase of cocaine from Mayo by a confidential informant on August 16, 2008. Id.

On August 27, 2008, Mayo was arrested by the Pottsville Bureau of Police and charged with the following four crimes: (1) delivery of a controlled substance (cocaine); (2) possession with intent to deliver a controlled substance (cocaine); (3) possession of a controlled substance (cocaine); and (4) criminal use of communication facility. Id., Exhibit 42 at 62-66.  The charges arose out of a controlled purchase of cocaine from Mayo by a confidential informant on July 5,  2008. Id.

On March 2, 2010, Mayo was found guilty by jury in the Court of Common Pleas of Schuylkill County of all of the charges which were filed on August 22 and 27, 2008, by the Pottsville Bureau of Police. Id., Exhibit 40 at 58 & Exhibit 41 at 60.  On May 17, 2010,

Mayo was sentenced by the Court of Common Pleas of Schuylkill County to a term of imprisonment to be served in a state correctional institution.[3] Id., Exhibit 45 at 73.

On June 3, 2010, the Board issued a decision recommitting Mayo as a convicted parole violator based on the new criminal convictions, and recalculated his maximum sentence date to March 14, 2016. Id., Exhibit 43 at 68.

On July 7, 2010, Mayo filed a petition for administrative review of the Board's June 3, 2010, decision. Id., Exhibit 44 at 70.  The Board denied the petition for administrative review on August 12, 2010. Id., Exhibit 45 at 73-74.  On October 13, 2010, the Board after conducting an interview with Mayo and reviewing his file denied Mayo reparole. Id., Exhibit 46 at 76.

On or about April 7, 2013, Mayo filed a second petition for administrative review of the Board's June 3, 2010, decision. Id., Exhibit 47 at 78-79.  Mayo argued in that second petition that his maximum sentence date was February 15, 2013, and that the June 3, 2010, decision of the Board unlawfully extended his maximum sentence date. Id.  On July 1, 2013, the Board denied Mayo's second petition for administrative review on the basis that it was second or subsequent administrative appeal prohibited by 37 Pa.Code § 73.1. Id., Exhibit 48 at  81.

Mayo did not challenge the Board's June 3, 2010, decision by filing a petition for review in the Commonwealth Court of Pennsylvania.

**Standards of Review**

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper

---

[3]The record does not disclose the length of the sentence.

mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-8 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-8 (1991); see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson vs. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

## A. Exhaustion

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. See 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999). "All claims that a petitioner in state custody attempts to present to a federal court must have been presented to each level of the state courts." Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000), cert. denied, 531 U.S. 1082 (2001). Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly

presented to the state courts." Castille v. Peoples, 489 U.S. 346, 351 (1989).   Fair presentation requires the petitioner to raise the claim in a procedural context in which the state courts can consider it on the merits. Id.   The exhaustion requirement applies to both consideration of claims that error occurred during a state court criminal proceeding and errors committed by the Pennsylvania Board of Probation and Parole.

This Court on several occasions has delineated the steps necessary to exhaust a claim that the Pennsylvania Board of Probation and Parole violated an inmate's constitutional rights. See George v. Kerestes, 2012 WL 1942073 *4 (M.D.Pa. May 29, 2012)(Kosik, J.); Fells v. Pennsylvania Bd. Of Prob. and Parole, 2012 WL 727904 *3 (M.D.Pa. March 6, 2012)(Jones, J); Washington v. Pennsylvania Bd. of Prob. and Parole, 2010 WL 5135896 *2 (M.D.Pa. Dec. 10, 2010)(Munley, J.).   First, the inmate must comply with the Board's rules regarding administrative review and, second, the inmate must present his claims to both the Commonwealth Court and Supreme Court of Pennsylvania. Id.; 37 Pa.Code § 73.1; 42 Pa.C.S.A. § 763(a).

**B**.   **Procedural Default**

If a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will excuse the failure to exhaust and treat the claims as exhausted. Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001);  see Teague v. Lane, 489 U.S. 288, 297-98 (1989).   Although deemed exhausted, such claims are considered procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 749 (1991); Lines, 208 F.3d at 160.

A federal habeas court cannot review the merits of procedurally defaulted

claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims.  See McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750-51;  Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992).  To demonstrate cause for a procedural default, the petitioner must show that some objective external factor impeded petitioner's efforts to comply with the state's procedural rule.  See Murray v. Carrier, 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, the petitioner must show "not merely that the errors created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire proceeding with error of constitutional dimensions."  See United States v. Frady, 456 U.S. 152, 170 (1982).

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice.  See Edwards v. Carpenter, 529 U.S. 446, 451 (2000);  Wenger, 266 at 224.  The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent."  Murray, 477 U.S. at 496.

## C.  **Merits**

Section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999).  Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent."  Id.

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct.  A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error.  Miller-El v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions) Matteo, 171 F.3d at 888; Thomas v. Varner, 428 F.3d 492, 497-98 (3d Cir. 2005).  This presumption of correctness applies to both explicit and implicit findings of fact. Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds

11

that a rational jurist could not reach the same finding on the basis of the evidence in the record.  28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp 2d 278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979).  "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction."  Breighner v. Chesney, 301 F. Supp 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief.  Porter, 276 F. Supp 2d at 296; see also Williams v. Taylor, 529 U.S. 362, 408-09 (2000); Hurtado v. Tucker, 245 F.3d 7, 16 (1st Cir. 2001).  Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination.  Porter, 276 F. Supp 2d at 296; see also Williams, 529 U.S. at 408-09.

**Discussion**

Mayo as stated above raises essentially one issue in his present federal habeas petition.  He claims that his maximum sentence expiration date for the sentence imposed on August 11, 1993 expired on February 15, 2013, and that the Board improperly recalculated his expiration date.  The Board argues that Mayo failed to exhaust his remedies with respect to that issue and it is  procedurally defaulted.  The Board also argues that even if the claim was not procedurally defaulted,  the Board was authorized to extend Mayo's maximum expiration date.

It is clear based on this courts review of the records of the Board that Mayo

failed to exhaust his state court remedies.   He did not take an appeal to the Commonwealth Court or seek review in the Supreme Court of Pennsylvania. Consequently, Mayo has procedurally defaulted.  Here, the prejudice analysis need not be reached.  Mayo offers absolutely nothing to explain why he did not follow the well-established process for challenging the Board's calculation of a parole violation maximum date.  Mayo procedurally defaulted his claim and he has not established a miscarriage of justice to excuse his procedural default.  Consequently, he is precluded from pursuing federal habeas corpus relief with regard to the issue raised.

Even if this court concluded that Mayo's claim was not procedurally defaulted, the court would find that the claim lacks merit. Mayo is incarcerated because his parole was revoked after he committed multiple criminal offenses while he was at liberty on parole. Under Pennsylvania law, parolees who commit crimes during the period of parole are subject to having their parole revoked.  A parolee whose parole is revoked because of a new conviction does not receive credit for time at liberty on parole against his or her maxmum sentence. 61 Pa.C.S.A. § 6138(a)(2).  Under the Pennsylvania statute "[w]hen computing the time yet to be served on the original sentence, the convicted parole violator's street time is added to the original maximum expiration date to create a new maximum expiration date." Miller v. Pennsylvania Board of Prob. and Parole, 2010 WL 2736873 *4 (M.D.Pa. July 12, 2010)(Muir, J.).   Mayo does not allege that there was an error in the Board's calculation. Instead he merely argues that the Board had no authority to recalculate his maximum expiration date.

Under the circumstances of this case the court will deny Mayo's petition for writ

13

of habeas corpus.  Mayo failed to exhaust his administrative remedies and he cannot excuse

his procedural default.   Moreover, even if it were not for the lack of exhaustion and

procedural default, Mayo's petition would still be denied on the merits.

An appropriate order will be entered.

s/A. Richard Caputo
A. RICHARD CAPUTO
United States District Judge

Dated: November 25, 2014